STATE OF NORTH CAROLINA v. ARRIS JAMES HINTON

No. 113PA06

(Filed 26 January 2007)

**Robbery— armed—hands not a dangerous weapon**

A defendant's hands cannot be dangerous weapons for purposes of robbery with a dangerous weapon under N.C.G.S. § 14-87. Although robbery with a dangerous weapon includes the lesser included offense of assault with a deadly weapon, the doctrine of lesser included offenses moves downstream, not up, and does not require that all deadly weapons for assault be dangerous weapons for robbery. Moreover, the text of N.C.G.S. § 14-87(a) is not sufficient to allow a jury to find robbery with the use of hands or feet to be robbery with a dangerous weapon; the General Assembly intended to require the State to prove that a defendant used an external dangerous weapon.

Justices TIMMONS-GOODSON and HUDSON did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 176 N.C. App. 191, 625 S.E.2d 918 (2006), affirming in part, reversing in part, and vacating and remanding in part judgments entered 6 August 2004 by Judge Orlando F. Hudson in Superior Court, Wake County. Heard in the Supreme Court 20 November 2006.

*Roy Cooper, Attorney General, by Robert C. Montgomery, Special Deputy Attorney General, for the State-appellant.*

*Kathryn L. VandenBerg for defendant-appellee.*

BRADY, Justice.

Following indictment and a trial by jury, Arris James Hinton (defendant) was convicted of robbery with a dangerous weapon, assault inflicting serious injury, and assault with a deadly weapon inflicting serious injury stemming from his beating of Raleigh Police Officer Kenneth Newton. The trial court arrested judgment on the assault inflicting serious injury conviction and sentenced defendant to consecutive active terms of imprisonment of 77 to 102 months for the robbery with a dangerous weapon conviction and 29 to 44 months for the assault with a deadly weapon inflicting serious injury conviction. Defendant appealed to the Court of Appeals, which in a unanimous opinion, affirmed defendant's conviction for assault with a deadly weapon inflicting serious injury, but vacated defendant's conviction for robbery with a dangerous weapon and remanded to the trial court for entry of judgment on the crime of common law robbery. We allowed the State's petition for discretionary review in order to determine whether a defendant's hands can be considered dangerous weapons under the robbery with a dangerous weapon statute, N.C.G.S. § 14-87. Because we hold that a defendant's hands are not dangerous weapons pursuant to the statute, we affirm the decision of the Court of Appeals.

## FACTUAL BACKGROUND

Defendant and Pam McCullers had been residing together in Raleigh until 16 May 2003, when defendant decided to move to Florida to reside with another female acquaintance. Upon arriving at the Raleigh Greyhound bus station by taxi, defendant purchased a ticket to Orlando, Florida, on a bus scheduled to depart at 5:00 or 5:30 p.m. After acquiring the ticket, defendant and an acquaintance walked to a store and purchased beer and wine. Upon defendant's return to the bus station, he discovered to his surprise that McCullers was present. McCullers appeared angry at defendant, and they argued loudly for about five to ten minutes before Raleigh City Police Officer Kenneth Newton arrived.

Officer Newton initially decided to separate defendant and McCullers, as he believed they were engaged in a domestic dispute over a television. After defendant exited the bus station, McCullers alleged that defendant did not live with her and that he had broken into her house and stolen her television. Officer Newton went outside to question defendant. Officer Newton was rendered unconscious by the ensuing altercation and, due to memory loss, he could

not comprehensively testify to the events that occurred when he confronted defendant.

Although there was conflicting testimony concerning the events that followed, it is undisputed that defendant and Officer Newton had a physical altercation which ended with Officer Newton unconscious and defendant taking Officer Newton's handgun from its holster. An eyewitness saw Officer Newton questioning defendant approximately ten to fifteen feet from the bus station wall. Officer Newton grabbed defendant's wrists, after which defendant pushed Officer Newton and the eyewitness lost sight of the altercation. After the eyewitness repositioned himself, he observed defendant strike a supine Officer Newton with his fists four times. Defendant testified at trial that Officer Newton grabbed him by the bicep, placed a hand on his throat, pinned him against the wall, began to choke him, rammed his head against the wall, and ripped his shirt, and that he saw Officer Newton reaching for his handgun. Defendant also testified he feared Officer Newton would shoot him unless he took the handgun from Officer Newton's possession.

After taking the handgun, defendant held it up in the air and began to move to the front of the building. At that time other police officers arrived. Defendant placed the gun on the ground, got on his knees, and put his hands on his head. After his arrest, defendant inquired about the health of Officer Newton and told the officers that Officer Newton "disrespected me, he put his hands on me, and I had to do what I had to do." Defendant's assault resulted in substantial injuries to Officer Newton, including a concussion, a torn right iris which has resulted in permanent damage, a fractured right eye socket, a shattered nose, and the loss of his senses of taste and smell.

## ANALYSIS

Robbery with a dangerous weapon is a statutory offense codified in N.C.G.S. § 14-87, and, therefore, the determination of whether a defendant's hands can be considered dangerous weapons is a matter of statutory construction. The relevant statute provides:

Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of busi-

ness, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

N.C.G.S. § 14-87(a) (2005). The issue is whether hands are included in the language "any firearms or other dangerous weapon, implement or means." *Id.* The State advances two arguments, both of which are unpersuasive. First, the State argues that because assault with a deadly weapon is a lesser included offense of robbery with a dangerous weapon, the "deadly weapon" and "dangerous weapon" elements must be identical. Additionally, the State argues the text of N.C.G.S. § 14-87(a) is sufficient to allow a jury to find a robbery committed by the use of hands to be a robbery with a dangerous weapon.

It is true assault with a deadly weapon is a lesser included offense of robbery with a dangerous weapon. *See State v. Richardson*, 279 N.C. 621, 628, 185 S.E.2d 102, 107 (1971) ("The crime of armed robbery defined in G.S. 14-87 includes an assault on the person with a deadly weapon."). As a lesser included offense, "all of the essential elements of the lesser crime must also be essential elements included in the greater crime." *State v. Weaver*, 306 N.C. 629, 635, 295 S.E.2d 375, 379 (1982), *overruled in part on other grounds by State v. Collins*, 334 N.C. 54, 61, 431 S.E.2d 188, 193 (1993); *see also Black's Law Dictionary* 1111 (8th ed. 2004) (defining a lesser included offense as "[a] crime that is composed of some, but not all, of the elements of a more serious crime and that is necessarily committed in carrying out the greater crime"). However, the fact that assault with a deadly weapon is a lesser included offense of robbery with a dangerous weapon does not mean that the *scope* of the weapon elements must be identical for each offense. The fact that every dangerous weapon under N.C.G.S. § 14-87 would also be a deadly weapon for purposes of assault with a deadly weapon does not necessitate that all deadly weapons for purposes of assault with a deadly weapon are dangerous weapons under N.C.G.S. § 14-87. The doctrine of lesser included offenses moves downstream, not upstream as the State contends.

We also disagree with the State's contention that the language of the statute provides for a conviction based upon the use of hands as deadly weapons in the commission of a robbery. The State encourages us to construe the robbery with a dangerous weapon statute *in pari materia* with N.C.G.S. § 14-33(c)(1), an assault with a deadly

weapon statute. The basis for the State's argument is that "[t]he statutes criminalizing robbery with a dangerous weapon and assault with a deadly weapon are *in pari materia* insofar as they both include a dangerous or deadly weapon element." The State's argument, if adopted, could result in absurd results if applied to other statutes in which the words "deadly" or "dangerous weapon" are used. *See, e.g.,* N.C.G.S. § 7B-2510(a)(10) (2005) (allowing as a special condition of probation for a juvenile that the juvenile not "possess [a] . . . deadly weapon"); *id.* § 14-288.7(a) (prohibiting the transport of dangerous weapons in times of riot or declared states of emergency).

Instead, upon construing the language of N.C.G.S. § 14-87(a), we hold that a defendant's hands and feet may not be considered dangerous weapons. The statute prohibits "the use or threatened use of any firearms or other dangerous weapon, implement or means." In construing statutes, we first determine whether the statute is clear and unambiguous, and if so, we apply the words in their plain and definite meaning. *See Diaz v. Div. of Soc. Servs.,* 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citing *Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)). "However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment." *Id.* (citing *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs,* 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) ("The best indicia of [legislative] intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish." (citations omitted)).

We find the use of the word "means," which the State asserts allows the jury to determine whether hands and feet were used as deadly weapons, to be ambiguous. In construing ambiguous criminal statutes, we apply the rule of lenity, which requires us to strictly construe the statute. *See State v. Ross,* 272 N.C. 67, 69, 157 S.E.2d 712, 713 (1967) ("Statutes creating criminal offenses must be strictly construed."); *see also Bell v. United States,* 349 U.S. 81, 83 (1955) ("When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."). Considering the purpose of N.C.G.S. § 14-87 is to provide for more severe punishment when the robbery is committed with the "use or threatened use of firearms or other dangerous weapons," *State v. Jones,* 227 N.C. 402, 405, 42 S.E.2d 465, 467 (1947), we conclude the General Assembly intended to require the State to prove that a

defendant used an external dangerous weapon before conviction under the statute is proper. To hold otherwise would remove the critical distinction between common law robbery and N.C.G.S. § 14-87 and require us to resolve an ambiguous criminal statute by making a liberal reading in favor of the State.

Additionally, "when particular and specific words or acts, the subject of a statute, are followed by general words, the latter must as a rule be confined to acts and things of the same kind." *State v. Craig*, 176 N.C. 740, 744, 97 S.E. 400, 401 (1918) (citing, *inter alia*, *State v. Goodrich*, 84 Wis. 359, 54 N.W. 577 (1893)). We find the words "firearm," "dangerous weapon," and "implement" to be specific words insofar as they list types of weapons that suffice under the statute to increase a defendant's sentence and further find that this list indicates a defendant must use an external weapon to be convicted under N.C.G.S. § 14-87. Accordingly, as "means" is more general in nature than "firearm," "dangerous weapon," and "implement," and could conceivably include non-external weapons such as hands, fists, or feet, we will construe the word "means" to be confined to the use of external weapons not otherwise considered firearms, dangerous weapons, or implements.

## CONCLUSION

We hold that a defendant's hands, in and of themselves, cannot be dangerous weapons for purposes of robbery with a dangerous weapon under N.C.G.S. § 14-87. Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justices TIMMONS-GOODSON and HUDSON did not participate in the consideration or decision of this case.