STATE OF NORTH CAROLINA, Plaintiff v. KINSEY CHAMBERS HADDOCK, III, Defendant

No. COA07-1050

(Filed 5 August 2008)

**1. Rape— second-degree—indictment—disjunctive—not facially invalid**

An indictment was not facially invalid where it alleged that defendant had raped a victim who was mentally incapacitated "and/or" physically helpless. A person of common understanding would know the intent of the indictment, and the language was sufficient to notify defendant of the charges against him.

**2. Appeal and Error— right to unanimous jury verdict—not raised at trial**

An assignment of error which alleges that a defendant's constitutional right to a unanimous jury verdict has been violated may be raised on appeal even though it was not raised at trial.

**3. Rape— second-degree—instruction—disjunctive—mental incapacity and physical helplessness**

An instruction on second-degree rape in which the clauses on mental incapacity and physical helplessness were joined by the disjunctive "or" was not fatally ambiguous in that it did not offer a choice between two discrete acts. Mental incapacity and physical helplessness are two alternative means by which the force necessary to complete a rape may be shown and are not discrete criminal acts.

**4. Rape— second-degree—instruction—mental incapacity— act committed upon victim—voluntary intoxication short of unconsciousness**

The trial court erred when it did not include the words "due to any act committed upon the victim" in an instruction on second-degree rape based upon the theory of mental incapacitation. Strictly construed because it is a criminal statute, the protection of N.C.G.S. § 14-27.1(2) does not serve to negate the consent of a person who voluntarily and as a result of her own actions becomes intoxicated to a level short of unconsciousness or physical helplessness. In this case, there was a reasonable possibility that a different result would have been reached at trial.

Appeal by defendant from judgment entered 26 April 2007 by Judge Richard W. Stone in Guilford County Superior Court. Heard in the Court of Appeals 21 February 2008.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Dorothy Powers, for the State.*

*Wyatt Early Harris Wheeler LLP, by Stanley F. Hammer, for defendant-appellant.*

STROUD, Judge.

Defendant Kinsey C. Haddock, III, appeals from judgment entered upon a jury verdict finding him guilty of second degree rape. The dispositive question presented by this case is whether, when a criminal defendant is tried for second degree rape on the theory of mental incapacitation, it is error for the trial court to fail to instruct the jury that it must find beyond a reasonable doubt that the victim's mental incapacitation was due to an act committed upon the victim. Because we conclude that it is, we reverse defendant's conviction and remand for a new trial.

## I. Background

The evidence in the record tends to show the following: On 31 December 2005 defendant accompanied the victim (or "S.B.") as the designated driver while S.B. and her friends drank alcohol to celebrate New Year's Eve. Defendant escorted S.B. to several bars and restaurants of her choice where she drank alcohol past midnight and into the early hours of the morning of 1 January 2006. Sometime between 2:00 a.m. and 4:00 a.m. on 1 January 2006, defendant, S.B., and S.B.'s friends, Krista Case and Joe Watkins went to Watkins' apartment. Watkins' roommate asked S.B. to leave the apartment around 4:00 or 5:00 a.m. because her drunken state had caused her to become loud and obnoxious. Defendant and S.B. left Watkins' apartment and went to defendant's apartment in Market Square Towers. S.B. testified at trial that she did not know where she was when she arrived at defendant's apartment and that she soon passed out from excessive drinking, falling asleep on defendant's bed. Defendant put on a condom and had intercourse with S.B. at around 6:00 a.m. on 1 January 2006.

After the act of intercourse, S.B. left defendant's apartment and went down to the lobby of the building, where she sprawled out on the floor in a "very intoxicated" state. Police officers were summoned

to the lobby on account of defendant's intoxicated behavior, and they smelled alcohol as soon as they entered the lobby. S.B. was taken by ambulance to High Point Regional Hospital, where she was evaluated for possible injuries arising from excessive alcohol consumption and from sexual intercourse. She told a nurse at the hospital that she had not lost consciousness during the night.

Later that morning, police officers went upstairs to defendant's apartment and questioned him. He admitted to having sex with S.B. but asserted that it was consensual. On 8 May 2006 the Guilford County Grand Jury, alleging that defendant had sexual intercourse with S.B. "by force and against the victim's will[,]" returned an indictment for second degree rape. On 2 April 2007, a superseding indictment alleged that defendant "unlawfully, willfully and feloniously did carnally know and abuse [S.B.] who was at the time mentally disabled, mentally incapacitated, and/or physically helpless." Defendant was tried before a jury in Superior Court, Guilford County, from 9 to 13 April 2007. The jury found defendant guilty of second degree rape. Upon the jury verdict, the trial court sentenced defendant to 70 to 93 months imprisonment. Defendant appeals.

## II. The Indictment

[1] Defendant contends that the superceding indictment was facially invalid because it alleged that defendant "unlawfully, willfully and feloniously did carnally know and abuse [S.B.], who was at the time mentally disabled, mentally incapacitated *and/or* physically helpless." (Emphasis added.) A facially invalid indictment deprives the trial court of jurisdiction to enter judgment in a criminal case. *State v. Call*, 353 N.C. 400, 429, 545 S.E.2d 190, 208, *cert. denied*, 534 U.S. 1046, 151 L. Ed. 2d 548 (2001). Indictments alleged to be facially invalid are therefore reviewed *de novo. State v. Marshall*, 188 N.C. App. 744, 748, 656 S.E.2d 709, 712, *disc. review denied*, 362 N.C. 368, —— S.E.2d —— (2008).

Although use of the phrase "and/or" in indictments has been criticized by the North Carolina Supreme Court, it is not *per se* fatal to the indictment. *See, e.g., State v. Daughtry*, 236 N.C. 316, 319, 72 S.E.2d 658, 660 (1952) (criticizing the use of "and/or" in indictments, but finding no error when the indictment was "sufficiently intelligible and explicit to (1) inform the defendant of the charge he must answer, (2) enable him to prepare his defense, and (3) sustain the judgment." (Citation and quotation omitted.)). An indictment is not facially invalid as long as it notifies an accused of the charges against him

sufficiently to allow him to prepare an adequate defense and to protect him from double jeopardy. *State v. Lowe*, 295 N.C. 596, 603, 247 S.E.2d 878, 883 (1978). Notification is sufficient if the illegal act or omission alleged in the indictment is "clearly set forth so that a person of common understanding may know what is intended." *State v. Coker*, 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984).

Short form indictments are permitted in prosecutions for rape by N.C. Gen. Stat. § 15-144.1, which states in pertinent part:

(a) In indictments for rape it is not necessary to allege every matter required to be proved on the trial . . . .

. . . .

(c) If the victim is a person who is mentally disabled, mentally incapacitated, or physically helpless it is sufficient to allege that the defendant unlawfully, willfully, and feloniously did carnally know and abuse a person who was *mentally disabled, mentally incapacitated or physically helpless*, naming such victim, and concluding as aforesaid. Any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law for the rape of a mentally disabled, mentally incapacitated or physically helpless person and all lesser included offenses.

N.C. Gen. Stat. § 15-144.1 (2005) (emphasis added). A short-form indictment for rape which tracks the language of N.C. Gen. Stat. § 15-144.1 is sufficient to give the trial court jurisdiction to enter judgment, "even though such indictments do not specifically allege each and every element," *State v. Harris*, 140 N.C. App. 208, 215, 535 S.E.2d 614, 619, *disc. review denied and appeal dismissed*, 353 N.C. 271, 546 S.E.2d 122 (2000), because such an indictment specifies the offense "[i]n words having precise legal import [thereby] put[ting] the defendant on notice that he will be called upon to defend against proof of the manner and means by which the crime was perpetrated." *Lowe*, 295 N.C. at 604, 247 S.E.2d at 883-84.

Except for the insertion of the words "and/or" in place of "or" the indictment tracked the language of N.C. Gen. Stat. § 15-144.1(c) precisely. From reading the indictment, a person of common understanding would know that the intent of the indictment was to accuse defendant of having sexual intercourse with a person deemed by law to be incapable of giving consent. In turn, this language was sufficient to notify defendant of the charges against him in order to

prepare an adequate defense and to protect him from being punished a second time for the same act. The indictment *sub judice* might have been clearer if only the word "or" or the word "and" had been used, but we hold that the use of "and/or" did not render the indictment facially invalid.

### III. Unanimous Jury Verdict

Defendant contends that his constitutional right to a unanimous jury verdict was violated when the trial court gave ambiguous instructions to the jury. N.C. Const. art. I, § 24. The allegedly erroneous instruction stated, in pertinent part:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant engaged in vaginal intercourse with the victim, and at the time (a) the victim was *so substantially incapable of appraising the nature of her conduct or resisting an act of vaginal intercourse as to be mentally incapacitated; or*, (b) the victim was so physically unable to resist an act of vaginal intercourse or communicate unwillingness to submit to an act of vaginal intercourse as to be physically helpless, and that the defendant knew . . . or should reasonably have known that the victim was mentally incapacitated or physically helpless, it would be your duty to return a verdict of guilty.

Defendant contends that the trial court's jury instruction was ambiguous in two ways. First, he contends that the instruction was ambiguous because it was a disjunctive instruction which offered the jury a choice between two discrete criminal acts. Second, he contends that even if simply joining the instruction on mental capacity and the instruction on physical helplessness in the disjunctive was not ambiguous, the portion of the instruction relating to mental incapacity was ambiguous because it misstated the law. The State argues that the disjunctive instruction was not ambiguous and that the law was correctly stated.

For the reasons that follow, we disagree with defendant that the disjunctive instruction improperly gave the jury a choice between two discrete criminal acts. However, we agree with defendant that the instruction was ambiguous because the jury instruction on mental incapacity misstated the law.

### A. Standard of Review

[2] Defendant did not object to the jury instructions at trial, on constitutional grounds or otherwise. In general, a constitutional issue

may not be raised for the first time on appeal. *State v. Chapman,* 359 N.C. 328, 360, 611 S.E.2d 794, 819 (2005). However, the North Carolina Supreme Court has recognized an exception for assignments of error which allege that a defendant's constitutional right to a unanimous jury verdict has been violated. *State v. Ashe,* 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985) (holding that because the defendant's right to a unanimous jury verdict had been violated when the trial judge spoke only with the jury foreman and not the whole jury when ruling that the jury could not review the evidence after beginning their deliberations, failure to object at trial did not waive the right to raise the issue on appeal); *see also State v. Mueller,* 184 N.C. App. 553, 575-76, 647 S.E.2d 440, 456 (extending the holding of *Ashe* to review defendant's appellate argument that ambiguous indictments led to a nonunanimous jury verdict even though he had not raised the issue at trial), *cert. denied,* 362 N.C. 91, 657 S.E.2d 24 (2007).

When a criminal defendant is denied a right arising under the North Carolina Constitution, he is entitled to a new trial only "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2005); *State v. Hartness,* 326 N.C. 561, 569, 391 S.E.2d 177, 182 (1990). *Contra State v. Smith,* 188 N.C. App. 207, 213-14, 654 S.E.2d 730, 735-36 (2008) ("Although the right to presence arises under the North Carolina Constitution . . . a new trial is appropriate unless the State proves the error to be harmless beyond a reasonable doubt."); *see* N.C. Gen. Stat. § 15A-1443(b) (2005) ("A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.").

B. Disjunctive Instructions

**[3]** First we consider defendant's contention that the instruction was error because the clauses on mental incapacity and on physical helplessness were joined by the disjunctive "or".[1] Defendant relies on *State v. Diaz,* 317 N.C. 545, 346 S.E.2d 488 (1986), to contend that a disjunctive instruction on the elements of a crime is fatally ambiguous unless the two clauses joined by the disjunctive are synonymous. We disagree.

---

1. Because we are granting defendant a new trial on a different assignment of error, it would not be necessary to consider this argument except that the issue may arise at a new trial. *State v. Barrow,* 350 N.C. 640, 645, 517 S.E.2d 374, 377 (1999).

A fatally ambiguous jury instruction violates a defendant's constitutional right to a unanimous verdict. N.C. Const. art. I, § 24; *State v. Lyons*, 330 N.C. 298, 307, 412 S.E.2d 308, 314 (1991); *see also* N.C. Gen. Stat. § 15A-1237(b) (2005) ("The verdict must be unanimous, and must be returned by the jury in open court."). *Diaz, supra,* and *Hartness, supra,* are the seminal cases in North Carolina regarding whether a disjunctive jury instruction is fatally ambiguous; both *Hartness* and *Diaz* have given rise to a line of cases applying the principles found therein. *See, e.g., State v. Funchess*, 141 N.C. App. 302, 307-09, 540 S.E.2d 435, 438-39 (2000) (discussing the differences between the *Diaz* line and the *Hartness* line); *State v. Almond*, 112 N.C. App. 137, 144, 435 S.E.2d 91, 96 (1993) ("[T]he difference [between the *Hartness* line and the *Diaz* line] is whether the two underlying acts are separate offenses or whether they are merely alternative ways to establish a single offense."). *Diaz* held that when the underlying acts joined by the disjunctive are separate offenses for which a defendant may be separately convicted and punished, the jury instruction is fatally ambiguous. 317 N.C. at 554-55, 346 S.E.2d at 494-95. *Hartness*, on the other hand, held that when the underlying acts joined by the disjunctive constitute a "single wrong . . . established by a finding of various alternative elements," the jury instruction is not fatally ambiguous. 326 N.C. at 566, 391 S.E.2d at 180. To decide whether the underlying acts joined by the disjunctive are separate offenses or merely alternative ways to establish a single offense, this Court considers the gravamen of the offense, determined by considering the evil the legislature intended to prevent and the applicable statutory language. *Lyons*, 330 N.C. at 305-06, 412 S.E.2d at 313-14.

The gravamen of the offense of second degree rape is forcible sexual intercourse. N.C. Gen. Stat. § 14-27.3 (2005). Force may be shown in several alternative ways including: (1) actual force, *State v. Hall*, 293 N.C. 559, 562-63, 238 S.E.2d 473, 475 (1977) (defendant grabbed victim's neck and pushed her onto the bed); (2) constructive force, *State v. Parks*, 96 N.C. App. 589, 594, 386 S.E.2d 748, 752 (1989) ("threats and displays of force by defendant for the purpose of compelling the victim's submission to sexual intercourse"); and (3) force implied in law, which includes sexual intercourse with a person who is mentally incapacitated, *State v. Washington*, 131 N.C. App. 156, 167, 506 S.E.2d 283, 290 (1998) ("[O]ne who is mentally defective under the sex offense laws is statutorily deemed incapable of consenting to intercourse or other sexual acts. . . . [F]orce is inherent to having sexual intercourse with a person who is deemed by law to

be unable to consent." (Citations and quotation marks omitted.)), *disc. review denied and appeal dismissed*, 350 N.C. 105, 533 S.E.2d 477-78 (1999), sleeping, *State v. Moorman*, 320 N.C. 387, 392, 358 S.E.2d 502, 506 (1987) ("[S]exual intercourse with [a sleeping] victim is *ipso facto* rape because the force and lack of consent are implied in law."), or physically helpless, *State v. Aiken*, 73 N.C. App. 487, 499, 326 S.E.2d 919, 926 ("The physical act of vaginal intercourse with the victim while she is physically helpless is sufficient 'force' for the purpose of second degree rape[.]"), *disc. review denied and appeal dismissed*, 313 N.C. 604; 332 S.E.2d 180 (1985).

Because mental incapacity and physical helplessness are but two alternative means by which the force necessary to complete a rape may be shown, and not discrete criminal acts, we conclude that this case is analogous to *Hartness*, 326 N.C. at 566-67, 391 S.E.2d at 180-81, and hold that the jury instruction excepted to *sub judice* was not fatally ambiguous simply because the physical helplessness clause and the mental incapacity clause were joined in the disjunctive. Accordingly, we overrule this assignment of error.

C. Instruction on Mental Incapacity

[4] Defendant alternatively contends that the jury instruction quoted *supra* is fatally ambiguous because the words "due to any act committed upon the victim" were omitted from the instruction on mental incapacity.[2] The State argues in its brief that the omission of those words was not error, because

[t]he term 'any act committed upon the victim' in N.C.G.S. § 14-27.1(2) may be *broadly interpreted* to include acts by others, by the victim, by animals, and/or inert objects. For purposes of this statute, a victim could be hit by a falling boulder rendering the victim incapacitated or bit [sic] by an insect causing a severe allergic reaction rendering the victim incapacitated. In the case at bar, *the act committed upon the victim was the act of the victim* consuming large quantities of alcohol.

(Emphasis added.)

The State's broad construction of the statute would render the words "due to any act committed upon the victim" unnecessary sur-

---

2. N.C. Gen. Stat. § 14-27.1(2) defines a mentally incapacitated victim as "a victim who *due to any act committed upon the victim* is rendered substantially incapable of either appraising the nature of his or her conduct, or resisting the act of vaginal intercourse or a sexual act." *Id.* (emphasis added).

plusage which need not be included in a jury instruction where a rape charge is based upon the mental incapacity of the victim. We disagree with the State.

"A trial judge is required to instruct the jury on the law arising on the evidence. This includes instruction on the elements of the crime. Failure to instruct upon all substantive or material features of the crime charged is error." *State v. Whiteley*, 172 N.C. App. 772, 780, 616 S.E.2d 576, 581 (2005) (citations, ellipses and quotation marks omitted). Therefore, in reviewing this assignment of error our task is to construe N.C. Gen. Stat. § 14-27.1 in order to determine whether or not the words "due to any act committed upon" the victim constitute a material feature of the crime charged. We conclude that they do.

> [W]e are guided by the principle of statutory construction that a statute should not be interpreted in a manner which would render any of its words superfluous. We construe each word of a statute to have meaning, where reasonable and consistent with the entire statute, because it is always presumed that the legislature acted with care and deliberation.

*State v. Coffey*, 336 N.C. 412, 417-18, 444 S.E.2d 431, 434 (1994) (citations, quotation marks, ellipses and brackets omitted). The other principle which guides us is that "[i]n construing ambiguous criminal statutes, we apply the rule of lenity, which requires us to strictly construe the statute." *State v. Hinton*, 361 N.C. 207, 211, 639 S.E.2d 437, 440 (2007).

At common law, the doctrine of force implied in law protected the class of persons who were "unconscious or insensibly drunk," whether the intoxicating substance was administered involuntarily by the defendant or someone else, or was voluntarily ingested by the victim. *Aiken*, 73 N.C. App. at 499, 326 S.E.2d at 926.[3] In the current statutory codification of the law of rape, the General Assembly clearly intended to continue to protect that class of persons when it inserted the subsection criminalizing intercourse with someone who

---

3. We acknowledge that some of the language in *Aiken* tends to conflate physical helplessness with mental incapacity. 73 N.C. App. at 499, 326 S.E.2d at 926. However, the statute expressly distinguishes physical helplessness from mental incapacity. N.C. Gen. Stat. § 14-27.1. Furthermore, the holding of *Aiken* is firmly grounded in the victim's physical helplessness in that the evidence showed that the victim was unconscious when the defendant had sexual intercourse with her, *id.*, and the defendant argued only that the jury instruction on physical helplessness was error, *id.* at 498, 326 S.E.2d at 925.

is physically helpless.[4] N.C. Gen. Stat. § 14-27.3(a)(2) (2005); *compare Moorman*, 320 N.C. at 392, 358 S.E.2d at 506 ("Our rape statutes essentially codify the common law of rape." (Citing N.C. Gen. Stat. § 14-27.2 *et seq.*)), *with State v. Turman*, 52 N.C. App. 376, 377, 278 S.E.2d 574, 575 (1981) ("The purpose of the [indecent liberties] statute is to give broader protection to children than the prior laws provided."). For purported rape victims with a lesser degree of impairment than physical helplessness, the question *sub judice* is whether the General Assembly intended for the protection of the doctrine of force implied in law to be extended to negate the consent of alleged victims who have voluntarily ingested intoxicating substances through their own actions. We conclude that it did not.

Under the plain language of N.C. Gen. Stat. § 14-27.3 and N.C. Gen. Stat. § 14-27.1(2), the protection of the doctrine of force implied in law was extended to a person who is suffering from a lesser degree of impairment than "unconscious or insensibly drunk" when that person is "*substantially incapable* of either appraising the nature of his or her conduct, or resisting the act of vaginal intercourse or a sexual act" *and* the person's condition was "*due to any act committed upon the victim.*" N.C. Gen. Stat. § 14-27.1(2) (2005). Although the words "committed upon" the victim could extend to acts committed by someone other than the person accused of the rape, *Aiken*, 73 N.C. App. at 499, 326 S.E.2d at 926, this phrase connotes an action committed *upon* the victim and not a voluntary act *by* the victim herself. Thus, the language of the statute, *strictly construed* as required for criminal statutes, *Hinton*, 361 N.C. at 211, 639 S.E.2d at 440, leads us to conclude that the protection of the statute does not serve to negate the consent of a person who voluntarily and as a result of her own actions becomes intoxicated to a level short of unconsciousness or physical helplessness as defined by N.C. Gen. Stat. § 14-27.1(3) (2005). Because we must strictly construe the statute, *Hinton*, 361 N.C. at 211, 639 S.E.2d at 440, limiting criminal liability to acts which the General Assembly clearly intended to forbid,[5] we decline the State's invitation to interpret the statute broadly

---

4. " 'Physically helpless' means (i) a victim who is *unconscious*; or (ii) a victim who is physically unable to resist an act of vaginal intercourse or a sexual act or communicate unwillingness to submit to an act of vaginal intercourse or a sexual act." N.C. Gen. Stat. § 14-27.1(3) (emphasis added).

5. The General Assembly could clarify the law of mental incapacity as applied to rape and other sexual offenses by adding words as Florida has done:

"Mentally incapacitated" means temporarily incapable of appraising or controlling a person's own conduct due to the influence of a narcotic, anesthetic, or intoxi-

to render the words "due to any act committed upon the victim" as unnecessary surplusage which need not be included in a jury instruction on mental incapacity.

For these reasons we hold that the words "due to any act committed upon the victim" were material to instructing the jury on the law of second degree rape. Accordingly, we conclude that the trial court erred when it did not include those words in the jury instruction quoted *supra*.

This error rendered the jury verdict fatally ambiguous, depriving the defendant of his constitutional right to a unanimous verdict granted by the North Carolina Constitution. N.C. Const. art. I, § 24. He is entitled to a new trial for this error if there is a reasonable possibility that a different result would have been reached at trial. N.C. Gen. Stat. § 15A-1443(a); *Diaz*, 317 N.C. at 554, 346 S.E.2d at 494. A careful review of the record shows that the evidence essentially boils down to a "he said/she said" version of the event. The evidence is uncontradicted that S.B. was voluntarily highly intoxicated as a result of her own actions at the time she had sexual intercourse with defendant. There was contradictory evidence as to whether S.B. was intoxicated to the point of being unconscious or physically helpless or to a lesser degree of impairment. We therefore conclude that there is a reasonable possibility that a different result would have been reached at trial if the jury had been properly instructed. Accordingly, we grant defendant a new trial on the charge of second degree rape.

---

cating substance administered without his or her consent or due to any other act committed upon that person *without his or her consent.*

Fla. Stat. § 794.011(1)(c) (2007) (emphasis added); *see also Coley v. State*, 616 So. 2d 1017, 1022-23 (Fla. App. 3 Dist. 1993) ("Plainly . . . the Florida sexual battery statute does not place voluntary drug or alcohol consumption on the same footing as involuntary consumption. . . . The prevailing view is that voluntary consumption of drugs or alcohol does not, without more, render consent involuntary."). The General Assembly could also leave out the "any act committed upon the victim" language altogether as Virginia has done:

"*Mental incapacity*" means that condition of the complaining witness existing at the time of an offense under this article which prevents the complaining witness from understanding the nature or consequences of the sexual act involved in such offense and about which the accused knew or should have known.

Va. Code Ann. § 18.2-67.10(3) (2004) (italics in original); *see also Molina v. Commonwealth*, 636 S.E.2d 470, 474-75 (Va. 2006) (discussing the meaning of mental incapacity under Virginia law).

NEW TRIAL.

Judges HUNTER and TYSON concur.