STATE OF NORTH CAROLINA
v.
TYSHAWN HINTON, Defendant

No. COA12-796

Filed 19 March 2013

1. **Evidence—gang-related testimony—irrelevant—prejudicial—plain error**

   The trial court erred in an attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and assault with a deadly weapon with intent to kill case by allowing irrelevant gang-related testimony. Furthermore, in view of the entire record, the admission of the testimony had a probable

---

impact on the jury's finding that defendant was guilty and thus constituted plain error.

**2. Judges—discretionary ruling—jury request—prejudicial**

The trial court erred in an attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and assault with a deadly weapon with intent to kill case when it failed to exercise its discretion in denying the jury's request to review testimony. As the testimony related to issues which were likely material to the determination of defendant's guilt or innocence, the trial court's failure to exercise discretion was prejudicial to defendant.

Appeal by defendant from judgment entered 9 December 2011 by Judge Walter H. Godwin, Jr., in Pasquotank County Superior Court. Heard in the Court of Appeals 13 December 2012.

*Roy Cooper, Attorney General, by Tina L. Hlabse, Special Deputy Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Kristen L. Todd and Hannah Hall, Assistant Appellate Defenders, for defendant–appellant.*

MARTIN, Chief Judge.

Defendant Tyshawn Hinton was charged in a true bill of indictment with attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and assault with a deadly weapon with intent to kill. A jury acquitted defendant of the attempted first-degree murder charge, but found defendant guilty of both assault charges. Judgment was entered upon the jury's verdict sentencing defendant to not less than 25 months and not more than 39 months of imprisonment for assault with a deadly weapon with intent to kill, and a consecutive term of not less than 73 months and not more than 97 months of imprisonment for assault with a deadly weapon with intent to kill inflicting serious injury. He appeals.

The State's evidence at trial tended to show that on or about the night of 22 February 2009, Myquetta McPherson was alerted by a neighbor's screams to call 911. Ms. McPherson telephoned 911 and told the dispatcher that someone had been shot and was lying in the road on Pritchard Street. The individual was later identified as Daniel Lindsey. Mr. Lindsey had been shot in the neck and was lying in a large pool of blood. Mr. Lindsey was taken to Albemarle Hospital where he was

diagnosed as paralyzed below his chest due to a spinal cord injury from the gunshot. Mr. Lindsey was ultimately airlifted to Norfolk General Hospital because of the seriousness of his injuries.

Officer Leroy Owen, a crime scene investigator for the Elizabeth City Police Department, was called to the scene of the Pritchard Street shooting. From the scene, Officer Owen collected the victim's cell phone and a nine-millimeter shell casing with a Winchester headstamp. Though the fired bullet exited the victim's body, Officer Owen was unable to locate the projectile at the scene.

Officer Owen left the scene of the Pritchard Street shooting to investigate an earlier shooting at the Sunoco gas station located at the intersection of Halstead Boulevard and Hughes Boulevard, commonly referred to as "H&H." In the Sunoco parking lot, Officer Owen found another nine-millimeter shell casing with a Winchester headstamp and a red bandana. Officer Owen also discovered that an alarm had been triggered at the Ruby Tuesday's restaurant across the intersection from the Sunoco. Officer Owen observed that one of the restaurant's windows had been shattered. After a search of the interior of the restaurant, Officer Owen found a fragment of a bullet's copper jacket and testified at trial that it had likely been fired from the direction of the Sunoco. Officer Owen also testified that the shell casing he recovered from Pritchard Street was "consistent" with the shell casing found at the Sunoco and that they would both "fit in the same gun." However, the trial court did not allow an SBI agent to testify as to whether the two casings Officer Owen recovered were fired from the same weapon. The court ruled the testimony inadmissible because the SBI agent could not identify one of the two casings entered into evidence as having her markings and therefore could not say whether it was the casing she actually tested in the lab. A gun was never introduced into evidence nor connected to defendant.

Sergeant P.W. Perry obtained a statement from a woman who said she saw a short, black male about 5' 4" tall wearing a dark jacket and jeans leaving Pritchard Street after the gunshot. This description was never connected to defendant.

About a month later, Detective Barbara Morgan and Sergeant Gary Bray interviewed Mr. Lindsey at Norfolk General Hospital. Due to his injuries, Mr. Lindsey's speech was impaired and the officers could not hear him, but he was able to make facial expressions and shake his head. Mr. Lindsey told the officers that it was defendant who had shot him. Mr. Lindsey made a second consistent statement to the officers the

following month. He also told the officers he had been at the Sunoco station ten minutes before the incident on Pritchard Street and that defendant had shot at him and missed. Detective Morgan testified that "[Mr. Lindsey] knew exactly what he was talking about."

Sergeant Bray testified that he has special training in narcotics and gang investigations. In February 2009, he was the commander of the drug and gang unit with the Elizabeth City Police Department. Over the years, he has been involved in hundreds of gang-related investigations, including numerous gang-related shootings. Sergeant Bray testified that Bloods and Crips[1] are the predominant gangs in Elizabeth City. Sergeant Bray testified regarding the subsets of the Bloods organization in Elizabeth City. Sergeant Bray also discussed the rivalries and conflicts between gangs and their subsets. Sergeant Bray maintains a database of gang members. The individuals in the database are either self-admitted gang members or persons who meet certain criteria, including associating with known gang members, engaging in criminal activity with a gang, or having tattoos, markings, and clothing consistent with gang membership. Sergeant Bray discussed the leadership and hierarchy of gangs as well.

As the commander of the drug and gang unit, Sergeant Bray was required to investigate all "shots-fired" calls in Elizabeth City, including the shooting on Pritchard Street. Pritchard Street, according to Sergeant Bray, is not a known gang area. Sergeant Bray testified that the red bandana recovered at H&H was "consistent with" what the Bloods would wear. H&H is a place where people often congregate after the clubs close, and has been the scene of numerous shootings, but Detective Bray did not testify that it was a known gang area. When the State asked if anyone connected to the events at issue was a known member of a gang, defense counsel objected. After a lengthy *voir dire* and arguments to the trial court, the trial court excluded the State's proffered evidence that defendant was a self-admitted gang member, due to a violation of his juvenile *Miranda* rights when he made the statement.

Mr. Lindsey testified with difficulty despite the aid of an interpreter to verbalize his testimony. His testimony was also interrupted numerous times by objections for leading and the trial court's reprimands to the State. At times, the interpreter resorted to the use of a legal pad with the alphabet written on it, reading each letter and judging Mr. Lindsey's response, attempting to spell out the answer. Through the interpreter, Mr. Lindsey testified that he was at the Sunoco station at Hughes and

---

1. While the trial transcript uses the spelling "Crypts," the generally accepted spelling of this gang's name is "Crips."

Halstead and saw defendant there. He testified that defendant shot at him at the gas station. Mr. Lindsey testified that after he left the gas station, he was later shot in the neck. Mr. Lindsey again identified defendant as the shooter at this second location. Mr. Lindsey was unable to testify as to the street on which the second shooting occurred. Mr. Lindsey testified that defendant and another individual named "Joey" then left in a pink car. Joey was the driver. Mr. Lindsey believed defendant shot him because he was in a sexual relationship with defendant's aunt. Defendant presented no evidence.

After the jury retired for deliberations, it sent a note to the trial judge, asking to review the testimony of Detective Morgan and Sergeant Bray concerning their interview of Mr. Lindsey in the hospital. The jury also wanted to review the SBI agent's testimony about the shell casings and asked if the casings matched. The trial court read the note to counsel for the State and counsel for defendant, and indicated that the court was going to give Pattern Jury Instruction 101.50, "Duty to Recall the Evidence." The trial court then asked counsel whether the court should tell the jury "that the information that they have requested has already been presented and is not in a form which can be presented to them, or just leave it at the instruction?" When the jury was brought in, the court simply read the instruction.

After further deliberations, the jury found defendant not guilty of attempted first-degree murder, but found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon with intent to kill. Though the State gave notice of intent to prove several aggravating factors, among them that defendant committed the crime for the benefit of or at the direction of a criminal street gang, or with the intent to promote, further, or assist in the criminal activities of a criminal street gang, the State ultimately did not pursue an aggravated sentence.

---

[1] Defendant first argues the trial court erred by allowing testimony from Sergeant Bray regarding gang activity in Elizabeth City. Specifically, defendant contends the testimony was irrelevant and highly inflammatory when no evidence was presented to the jury that the offense in question was gang related. Defendant did not object to the testimony at trial; thus, the standard of review is plain error. *See* N.C.R. App. P. 10(a)(4); *see also State v. Rourke*, 143 N.C. App. 672, 675, 548 S.E.2d 188, 190, *cert. denied*, 354 N.C. 226, 553 S.E.2d 396 (2001).

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citing *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). A fundamental error is one where "after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (internal quotation marks omitted). The burden of demonstrating the existence of this prejudice is on the defendant. *Id.* at 516, 723 S.E.2d at 333 (citing *State v. Melvin*, 364 N.C. 589, 593–94, 707 S.E.2d 629, 632–33 (2010)).

North Carolina courts have long held that membership in an organization may only be admitted if relevant to the defendant's guilt. *State v. Privette*, __ N.C. App. __, __, 721 S.E.2d 299, 314–15 (excluding membership in the Bloods as to one defendant), *disc. review denied sub nom. State v. Smith*, __ N.C. __, 724 S.E.2d 532 (2012); *State v. Freeman*, 313 N.C. 539, 548, 330 S.E.2d 465, 473 (1985) (excluding, in part, membership in the Southern Cross motorcycle gang); *State v. Lynch*, 279 N.C. 1, 18, 181 S.E.2d 561, 572 (1971) (excluding membership in the Black Panthers), *superseded on other grounds by rule as stated in State v. Stager*, 329 N.C. 278, 316, 406 S.E.2d 876, 898 (1991). The United States Supreme Court has opined that evidence of gang membership may be relevant to prove an aggravating factor. *Dawson v. Delaware*, 503 U.S. 159, 166, 117 L. Ed. 2d 309, 318 (1992). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2011). "[E]vidence that has not been connected to the crime charged and which [has] no logical tendency to prove any fact in issue [is] irrelevant and inadmissible." *Privette*, __ N.C. App. __, 721 S.E.2d at 314 (second and third alterations in original) (internal quotation marks omitted). Relevant evidence may also be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." N.C. Gen. Stat. § 8C-1, Rule 403 (2011).

This Court has recognized that admission of gang-related testimony tends to be prejudicial: In *Privette*, we stated that "[t]he only effect of the trial court's decision to allow the admission of this evidence was to depict a 'violent' gang subculture of which [the defendant] was a part and to impermissibly portray [the defendant] as having acted in accordance with gang-related proclivities." __ N.C. App. at __, 721 S.E.2d at 314–15.

In this case, Sergeant Bray's testimony in front of the jury spanned twenty-nine pages of trial transcript, fifteen of which referenced gangs or gang-related activity. The words "gang," "gangster," "Bloods," and

"Crypts [sic]" were used a combined total of ninety-one times. The trial court erred in allowing this gang-related testimony because it had no tendency to make any fact of consequence more likely than not. Nor did this testimony tend to prove an aggravating factor that the crimes were gang-related. Rather, the motive offered by the State in this case was Mr. Lindsey's sexual relationship with defendant's aunt, not gang violence. Thus, the State's proffered evidence that defendant was a self-admitted gang member, had it been admitted, was neither relevant to the alleged criminal act nor to the aggravating factor of which the State had given notice of its intent to show. Therefore, the gang-related testimony was never "connected to the crime charged" and was thus "irrelevant and inadmissible." *See Privette*, ___ N.C. App. ___, 721 S.E.2d at 314.

In addition to being irrelevant, the extensive gang-related testimony carried the danger of unfair prejudice that substantially outweighed its non-existent probative value. *See* N.C. Gen. Stat. § 8C-1, Rule 403. While no one was allowed to testify before the jury that defendant was an actual gang member, we believe the extensive gang-related testimony permitted the jury to assume that defendant was a gang member and draw the inference feared in *Privette*. *See Privette*, ___ N.C. App. at ___, 721 S.E.2d at 314–15. Therefore, we hold that this testimony was erroneously admitted.

Having concluded that the admission of the gang-related testimony was error, we must decide whether the error rises to the level of plain error. We have not found plain error in admitting gang-related testimony where other sufficient evidence tends to implicate the defendant in the crime. *State v. Dean*, 196 N.C. App. 180, 195, 674 S.E.2d 453, 463–64 (finding no plain error where witnesses' testimonies, though contradictory, tended to place the defendant at the scene of the shooting and firing the gun in question), *appeal dismissed and disc. review denied*, 363 N.C. 376, 679 S.E.2d 139 (2009); *State v. Hightower*, 168 N.C. App. 661, 667, 609 S.E.2d 235, 239 (finding no plain error where "numerous eyewitnesses" provided "overwhelming evidence" of defendant's guilt), *disc. review denied*, 359 N.C. 639, 614 S.E.2d 553 (2005).

In this case, however, only one eyewitness, Mr. Lindsey, implicated defendant in the commission of the crime. Mr. Lindsey's testimony was halting, awkward, and incomprehensible at times due to his physical disability.[2] Mr. Lindsey's interpreter often resorted to asking him to

---

2. That Mr. Lindsey's speech is impaired due to the crimes defendant is alleged to have committed against Mr. Lindsey is a fact not lost on this Court. However, that fact does not mitigate the erroneous admission of inadmissible evidence.

spell what he was attempting to convey by going through each letter of the alphabet and asking, "A? No. B? No. C? No. D? No. . . ." Frequently when asked a question, the transcript indicates Mr. Lindsey attempted to respond, but the interpreter was presumably unable to understand Mr. Lindsey and so said nothing. And while Detective Morgan testified that Mr. Lindsey told her that defendant was the shooter and was consistent in this statement, such testimony was merely corroborative of Mr. Lindsey and was not substantive evidence that defendant was the shooter. *See State v. Gell*, 351 N.C. 192, 204, 524 S.E.2d 332, 340 ("It is well established that a witness'[s] prior consistent statements may be admitted to corroborate the witness'[s] sworn trial testimony but prior statements admitted for corroborative purposes may not be used as substantive evidence."), *cert. denied*, 531 U.S. 867, 148 L. Ed. 2d 110 (2000). In fact, Detective Morgan's testimony may also be construed as improper vouching for Mr. Lindsey's account.

Additionally, no evidence apart from Mr. Lindsey's testimony was introduced linking defendant to the scene of either crime. No evidence was introduced linking defendant to a nine-millimeter firearm or even linking the two nine-millimeter shell casings to the same firearm. And no evidence was introduced linking defendant to the red bandana found at the scene.

The State argues, citing *State v. Gayton*, 185 N.C. App. 122, 126, 648 S.E.2d 275, 279 (2007), that ignoring all evidence related to gangs and gang activity, the unchallenged evidence presented by the State at trial showed that defendant shot at Mr. Lindsey at the Sunoco gas station on 22 February 2009, and later shot Mr. Lindsey in the neck while he was walking on Pritchard Street that same night. However, the State's evidence may be challenged by cross-examination of its witnesses. *State v. Smith*, 290 N.C. 148, 168, 226 S.E.2d 10, 22, *cert. denied*, 429 U.S. 932, 50 L. Ed. 2d 301 (1976).

In this case, defendant cross-examined Mr. Lindsey, pointing out that Mr. Lindsey had to leave a club on the evening of the shooting because of an altercation, suggesting someone other than defendant may have had a motive to commit the crime. Defendant also questioned Mr. Lindsey about his prior convictions, challenging his credibility. *See* N.C. Gen. Stat. § 8C-1, Rule 609(a) (2011). Therefore, the evidence that defendant committed the crime was not "unchallenged."

In view of the entire record, we hold the admission of extensive gang-related testimony "had a probable impact on the jury's finding that

defendant was guilty," *see Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334, and thus constitutes plain error.

[2] Defendant next argues the trial court erred when it failed to exercise its discretion in denying the jury's request to review testimony. Specifically, defendant argues the statement made by the trial court to counsel indicates the trial court believed that "it either did not have the ability to produce a transcript or that a transcript simply was not available."

N.C.G.S. § 15A-1233 concerns the "[r]eview of testimony" and "use of evidence by the jury." N.C. Gen. Stat. § 15A-1233 (2011). It provides:

> If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

*Id.* The statute imposes a duty upon a trial court to "exercise its discretion in determining whether to permit requested evidence to be read to or examined by the jury together with other evidence relating to the same factual issue." *State v. Ashe*, 314 N.C. 28, 34, 331 S.E.2d 652, 656 (1985). If a trial court fails in its duty "by denying the jury's request to review the transcript upon the ground that the trial court has no power to grant the motion in its discretion, the ruling is reviewable, and the alleged error is preserved by law even when the defendant fails to object." *State v. Starr*, 365 N.C. 314, 317, 718 S.E.2d 362, 365 (2011) (internal quotation marks omitted). Our appellate courts will find error "when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented." *State v. Lang*, 301 N.C. 508, 510, 272 S.E.2d 123, 125 (1980). It is "the well-settled rule that a trial court does not exercise its discretion when, as evidenced by its response, it believes it cannot comply with the jury's transcript request." *Starr*, 365 N.C. at 318, 718 S.E.2d at 366. In these cases, "the court's additional instruction that the jurors rely on their memory will not render the response discretionary."[3] *Id.* at 318–19, 718 S.E.2d at 366.

---

3. A trial court may avoid this situation altogether and simply state, "In the exercise of my discretion, I deny the request," and instruct the jury to rely on its own recollection.

**STATE v. HINTON**

[226 N.C. App. 108 (2013)]

If the trial court fails to exercise its discretion, the defendant then has the burden to show "that he has been prejudiced by the trial court's error . . . ." *Id.* at 319, 718 S.E.2d at 366. This prejudice may be shown by demonstrating "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2011). Often this will take the form of showing the requested testimony "was material to the determination of [the] defendant's guilt or innocence," *Lang*, 301 N.C. at 511, 272 S.E.2d at 125, or showing "such testimony or evidence 'involved issues of some confusion and contradiction' [for the jury.]" *State v. Johnson*, 164 N.C. App. 1, 20, 595 S.E.2d 176, 187 (citing *State v. Johnson*, 346 N.C. 119, 126, 484 S.E.2d 372, 377 (1997)), *appeal dismissed and disc. review denied*, 359 N.C. 194, 607 S.E.2d 658–59 (2004).

In this case, after the jury retired to deliberate, it sent a note to the trial court:

> The Court: All right. Ladies and gentlemen, I have received a note from the jurors. It reads, ['C]an we see or hear the testimony from Officer Morgan and Sargent [sic] Bray about when they questioned [Mr. Lindsey] at the hospital and the S.B.I. testimony about the bullet casings? Did they match?[']
>
> Give me just a minute. I am going to bring the jury back in and read to them 101.50, duty to recall the evidence. [']It is your duty to recall and consider all of the evidence introduced during this trial. If your recollection of the evidence differs from that from which the attorneys argued to you, you should be guided by your own recollection in your deliberations.[']
>
> Anything from the State?
>
> [The State]: No, sir.
>
> The Court: Anything from the Defendant?
>
> [Defendant]: No, sir. Judge.

---

See *Starr*, 365 N.C. at 319, 718 S.E.2d at 366 (citing 1 Super. Court Subcomm., Bench Book Comm. & N.C. Conf. of Super. Court Judges, *North Carolina Trial Judges' Bench Book* § III, ch. 38, at 2 (Inst. of Gov't, Chapel Hill, N.C., 3d ed. 1999)).

The Court: Should I tell them that the information that they have requested has already been presented and is not in a form which can be presented to them or just leave it at the instruction?

[The State]: I think I would probably want to know — to just explain why it's not available. I mean, I don't know if we could do it. We would have to do a transcript and it will take too long.

The Court: Well, I am just going to read the instruction.

[Defendant]: The instruction, Judge.

The Court: All right. That's what I am going to do. Will you bring the jury in?

The jury was returned to the courtroom and the trial court addressed them:

The Court: Ladies and gentlemen, I have received your question and/or questions. I instruction [sic] you that it is your duty to recall the evidence and consider all of the evidence that's been introduced during this trial. If your recollection of the evidence differs from that from which the attorneys argued to you, you should be guided by your own recollection in your deliberations.

I instruct you that you may now return to the jury room to continue your deliberations.

Here the trial court indicated on the record that the requested information was "not in a form which can be presented to [the jury.]" This statement concerning the jury's request is indistinguishable from other cases where we have found error. *See, e.g., Starr*, 365 N.C. at 317–19, 718 S.E.2d at 365–66 (holding the trial court's statement, "we don't have the capability . . . so we cannot provide you with that," an erroneous failure to exercise discretion); *State v. Barrow*, 350 N.C. 640, 647, 517 S.E.2d 374, 378 (1999) (holding as erroneous the statement by the trial court that it "doesn't have the ability to now present to you the transcription of what was said during the course of the trial"); *Ashe*, 314 N.C. at 35, 331 S.E.2d at 656 (holding that it was error for the trial court to respond to the jury's request simply by saying "[t]here is no transcript at this point"); *Lang*, 301 N.C. at 510–11, 272 S.E.2d at 125 (holding the trial court's answer that "the transcript is not available to the jury" was a failure to exercise discretion and was erroneous as a matter of law).

In this case, the statement by the trial court demonstrated a belief that it was not capable of complying with the jury's transcript request. *See Starr*, 365 N.C. at 318, 718 S.E.2d at 366. Therefore, we hold the trial court failed in its statutory duty to exercise discretion in responding to the jury's request.

We must now determine whether this error prejudiced defendant. The evidence the jury asked to review concerned Detective Morgan and Sergeant Bray's interviews with Mr. Lindsey in the hospital. Through this testimony, the State presented its version of what happened to Mr. Lindsey on the night of the shooting. With both Detective Morgan and Sergeant Bray, the trial court sustained objections to questions about whether Mr. Lindsey identified defendant as the shooter. However, Detective Morgan later volunteered Mr. Lindsey's identification of defendant as the shooter in response to another question. The State used the testimony of Detective Morgan and Sergeant Bray to offer a more direct account of what allegedly occurred than Mr. Lindsey was able to give in court. The testimony was also used to portray Mr. Lindsey as giving consistent statements as to who shot him and where.

The jury also asked to review the testimony by the SBI agent concerning the fired shell casings and specifically inquired whether the shell casings matched. While Officer Owen testified the shell casing he recovered from Pritchard Street was "consistent" with the shell casing found at the Sunoco and that they would both "fit in the same gun," the trial court did not allow the SBI agent to testify as to whether the two casings Officer Owen recovered were fired from the same weapon.

Both areas of testimony requested by the jury likely involved issues of "confusion and contradiction" in its deliberations. *See Johnson*, 164 N.C. App. at 20, 595 S.E.2d at 187. That during both Detective Morgan and Sergeant Bray's testimony, the trial court sustained objections to the question of whom did Mr. Lindsey identify as the shooter, yet Detective Morgan later gave the information in the answer to a separate question, possibly created issues of confusion with the jury. Due to his disability, Mr. Lindsey's own testimony may have created the same issues of confusion and contradiction with the jury. And the jury was plainly confused by the testimony of the SBI agent, as noted by its question of whether the shell casings matched.

These issues were also likely "material to the determination of defendant's guilt or innocence." *See Lang*, 301 N.C. at 511, 272 S.E.2d at 125. Confusion over the identification of defendant as the shooter certainly bears on his guilt or innocence. Confusion over whether the shell

casings were fired from the same gun would likely influence the jury's deliberations concerning whether the same individual committed both assaults. Therefore, we hold the trial court's failure to exercise discretion in this case was prejudicial to defendant.

Because of the aforementioned errors, we vacate the judgment of the trial court and remand for a new trial. As defendant is entitled to a new trial, we decline to address the remaining issue defendant raised on appeal.

New Trial.

Judges STROUD and HUNTER, JR. concur.