ARROWOOD, Judge.
 

 *481
 
 Julien Antonio Allen ("defendant") appeals from judgments entered upon his convictions for first degree murder, robbery with a dangerous weapon, assault with a deadly weapon with intent to kill inflicting serious injury, and conspiracy to commit robbery with a dangerous weapon. For the following reasons, we find no error.
 

 I.
 
 Background
 

 On 10 January 2017, a Johnston County Grand Jury indicted defendant for first degree murder of Mr. Esmail Alshami ("Mr. Alshami"), robbery with a dangerous weapon from the person and presence of Mr. Alshami, assault with a deadly weapon with intent to kill inflicting serious injury of Mr. Ricky Lynch ("Mr. Lynch"), and conspiracy to commit the murder. The Grand Jury later entered a superseding indictment, replacing the aim of the conspiracy charge with conspiracy to commit robbery. The matter came on for
 
 *565
 
 trial on 19 March 2018 in Johnston County Superior Court, the Honorable Thomas H. Lock presiding. The State's evidence tends to show as follows.
 

 Defendant and his friend Omari Smith ("Smith") robbed a Knightdale restaurant on 20 October 2016, with the help of an additional accomplice. They used gray bandanas, guns, and a clown mask to carry out the robbery. A week later, on 27 October 2016, defendant and Smith agreed to rob a Shop-N-Go variety store. Their friend Darius McCalston ("McCalston") also agreed to participate in the robbery.
 

 The group met at Smith's grandmother's house, and got into defendant's girlfriend, Grecia Montes ("Montes")'s, mother's car. Defendant drove, Montes sat in the front passenger seat, and Smith and McCalston sat in the backseat. They arrived at the Shop-N-Go around 10:00 p.m., parking the car on the other side of the street, across from the store.
 

 Defendant and Montes remained in the car while Smith and McCalston left to stand outside the store, armed with guns supplied by defendant. Their faces were covered with gray bandanas. Defendant kept watch, and communicated with Smith and McCalston by phone. At defendant's direction, Smith and McCalston began the robbery.
 

 A store clerk, Mr. Alshami, stood behind the counter. Smith and McCalston demanded that Mr. Alshami fill a bag with money. Smith went behind the counter, holding out the bag for Mr. Alshami to fill, and grabbing cigars. McCalston told Mr. Alshami: "Make one more move, I'll shoot the shit out of you." McCalston then shot Mr. Alshami. He later told Smith that he shot Mr. Alshami because Mr. Alshami hit an alarm.
 

 *482
 
 The other store clerk, Mr. Lynch, said, "Hey, what's going on in there?"
 
 [
 
 Smith and McCalston fled. Smith ran out the backdoor, shooting behind him at Mr. Lynch as he made his way to Montes' mother's car. One of the shots hit Mr. Lynch in the abdomen. Once Smith and McCalston reached Montes' mother's car, defendant drove them to Montes' mother's house, where Smith and McCalston divided the money they stole during the course of the robbery.
 

 Mr. Alshami died as a result of gunshot wounds to his neck and back. Mr. Lynch recovered after spending three weeks in the hospital.
 

 One of defendant's housemates, Malik Rogers ("Rogers") later found gray and blue bandanas, a gun, and a clown mask in defendant's closet. He used the bandanas and clown mask to carry out a robbery on 1 November 2016. Although defendant did not participate in this robbery, the evidence tended to connect the masks from the other robberies to defendant. Smith and defendant again robbed a store on 9 December 2016, with another accomplice, Nathan Davis ("Davis").
 

 On 29 March 2018, the jury found defendant guilty of all charges. The trial court sentenced defendant to life imprisonment without parole for first degree murder, 83 to 112 months for assault with a deadly weapon with intent to kill inflicting serious injury, and 29 to 47 months for conspiracy, all to be served consecutively. The trial court arrested judgment on the robbery charge.
 

 Defendant appeals.
 

 II.
 
 Discussion
 

 Defendant argues the trial court erred by admitting into evidence: (1) a recorded statement given by Montes, and (2) gang-related evidence. We address each argument in turn.
 

 A.
 
 Montes' Recorded Statement
 

 Montes did not attend defendant's trial. Nevertheless, after finding Montes was "unavailable" for purposes of N.C. Gen. Stat. § 8C-1, Rule 804(a)(5) (2017) and the Confrontation Clause of the United States Constitution, and holding that defendant forfeited his constitutional right to confront her, the trial court admitted a recorded statement Montes made to law enforcement prior to trial. Defendant argues the trial court erred by admitting this statement because: (1) Montes was not "unavailable" for purposes of N.C. Gen. Stat. § 8C-1, Rule 804(a)(5) and the Confrontation Clause, and (2) defendant did not forfeit his constitutional right to confront Montes. We disagree.
 

 *566
 

 *483
 
 i.
 
 Unavailability
 

 Rule 804(a) of the North Carolina Rules of Evidence lists the scenarios that permit a trial court to determine a declarant is "unavailable" to testify as a witness at trial. Here, the trial court determined Montes was unavailable pursuant to Rule 804(a)(5), which permits statements to be introduced at trial in lieu of live testimony if: (1) the declarant is unavailable as a witness, and (2) the statement qualifies as a circumstance listed in Rule 804(b). N.C. Gen. Stat. § 8C-1, Rule 804(b). The trial court determined Montes' recorded statement fell within the scope of both Rule 804(b)(3) and (5) :
 

 (3) Statement Against Interest. - A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible in a criminal case unless corroborating circumstances clearly indicate the trustworthiness of the statement.
 

 ....
 

 (5) Other Exceptions. - A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. ...
 

 N.C. Gen. Stat. § 8C-1, Rule 804(b).
 

 In contrast, our courts have held that finding witnesses unavailable for the purposes of the Confrontation Clause requires a finding that "the prosecutorial authorities have made a good-faith effort to obtain [the declarant's] presence at trial."
 
 State v. Clonts
 
 , --- N.C. App. ----, ----,
 
 802 S.E.2d 531
 
 , 544 (2017) (quoting
 
 Barber v. Page
 
 ,
 
 390 U.S. 719
 
 , 724-25,
 
 88 S.Ct. 1318
 
 ,
 
 20 L.Ed. 2d 255
 
 , 260 (1968) ),
 
 aff'd
 
 , --- N.C. ----,
 
 813 S.E.2d 796
 
 (2018).
 

 *484
 
 Thus, in sum,
 

 [t]he trial court was required to make sufficient findings of fact, based upon competent evidence, in support of any ruling that the State had satisfied its burden of demonstrating that it had been unable to procure [the declarant's] attendance ... by process or other reasonable means for the purposes of N.C. Gen. Stat. § 8C-1, Rule 804(a)(5), and that it had made a good-faith effort to obtain [her] presence at trial for Confrontation Clause purposes.
 

 Id.
 

 at ----,
 
 802 S.E.2d at 545
 
 (citation and internal quotation marks omitted).
 

 To review a trial court's determination that a witness is unavailable, our Court considers "whether the trial court's findings of fact related to the witness' unavailability were supported by the evidence and, in turn, supported its conclusions of law."
 

 Id.
 

 at ----,
 
 802 S.E.2d at 545
 
 (citations omitted). "The degree of detail required in the finding of unavailability will depend on the circumstances of the particular case."
 

 Id.
 

 at ----,
 
 802 S.E.2d at 545
 
 (quoting
 
 State v. Triplett
 
 ,
 
 316 N.C. 1
 
 , 8,
 
 340 S.E.2d 736
 
 , 740-41 (1986) ).
 

 In the present case, Montes was arrested in connection with the crimes charged against defendant. Following her arrest, she cooperated with law enforcement and gave a statement about the robbery that tended to incriminate defendant. Montes agreed to appear in court and testify against defendant, but failed to appear. Her whereabouts were unknown to her family, bondsman, and the State. The State moved the trial court to allow her recorded statement into evidence on grounds that she was unavailable, and also that defendant forfeited his constitutional right to confrontation with regard to Montes due to his own wrongdoing.
 

 The trial court heard the motion at an evidentiary hearing on 28 March 2018. The trial court found, in relevant part:
 

 *567
 
 8. After Montes failed to appear, the State obtained recordings of the defendant's telephone calls from jail to his mother and grandmother. ...
 

 9. On 15 March 2018, the defendant made a recorded call to his mother. ... [His mother] then connected Montes to the call so that it became a three-way call. During this call, the defendant made the following statements to Montes: "You know what the f***
 

 *485
 
 you're supposed to be doing. You know what I'm talking about. You got time to do everything else, n*****." Montes responded to the defendant and said, "Now I have to testify against you, how do you think that makes me feel? You didn't take the plea."
 

 10. Later that same day, the defendant placed a recorded call to his grandmother ... [she] then connected Montes to this call. During this call, the defendant said to Montes: "You're thinking about your mother f****** self, n*****, lying, thinking of yourself. You're trying to save your own ass. You ain't doing a mother f****** thing, you are a selfish mother f*****. You're trying to blame it on me. What the f***** wrong with you?" Montes responded and asked, "What am I supposed to do?" The defendant replied: "Let me break it down, I'm not trying to save my neck to f*** someone else's life up. You're f****** stupid. You don't listen. You ain't doing a thing you're supposed to because you're out getting your nails done. The only thing on my shit is your lying ass because you are a selfish mother f*****. You're the mother f****** reason I'm in here right now while you're out getting your nails done. Who the f*** else know [sic]? At the end of the day, you might be home, but I've to deal with this shit you've put me in."
 

 11. On 22 March 2018, the day before a cooperating co-defendant, Omari Smith, was scheduled to testify, the defendant placed a recorded call to an unknown recipient. ... The defendant told the recipient to attend court the next day because Omari would be in court at 9:30 "lying his ass off," and the defendant told the recipient to "put it on Facebook."
 

 12. On the morning of 23 March 2018, the court observed two young male individuals appear in the courtroom. These two males had not previously attended any part of the trial. After approximately one hour, the court ordered the bailiff to eject one of these males from the courtroom because of his disruptive behavior. Both males left the courtroom and never returned.
 

 13. Omari Smith testified that the defendant called him prior to their arrests and threatened Smith's brother.
 

 *486
 
 Smith further testified that he decided to testify against the defendant in part because of this threat.
 

 ....
 

 15. On 15 March 2018, the defendant's mother and grandmother ... appeared at the residence of Montes' parents. Montes was not home. ... [Defendant's mother and grandmother] had been to the residence on prior occasions ... but this time they stayed longer than usual, waiting until Montes arrived home.
 

 16. After Montes arrived home from work, [defendant's mother and grandmother] engaged in a hushed conversation with her. When [they] left, Montes' parents questioned her about the conversation. Montes said [they] had told her to "make the best choice that she had to make." Montes' mother told Montes that her decision had already been made and that she needed to go to court and testify.
 

 17. Montes' parents have not seen or talked with Montes since Sunday, 18 March 2018, and have reported her missing to the Johnston County Sheriff's Office.
 

 18. The net effect of the defendant's words and conduct, in particular his words and conduct directed towards [Montes], was to pressure and intimidate her into
 
 *568
 
 not appearing in court and testifying in this case.
 

 19. On 26 March 2018, the State gave the defendant written notice under [N.C. Gen. Stat. §] 8C-1, Rule 804(b)(5) of its intent to introduce the recorded statement of Montes. The recorded statement had been provided to the defendant during discovery.
 

 Based on these findings of fact, the trial court concluded Montes was "unavailable as a witness for the State within the definition of [N.C. Gen. Stat. §] 8C-1, Rule 804(a)(5)." Additionally, the trial court concluded:
 

 3. The statement was at the time of its making so far contrary to Montes' penal interest that she reasonably would not have made it unless she believed it to be true, and corroborating circumstances clearly indicate the trustworthiness of the statement.
 

 4. Montes' recorded statement is admissible under [N.C. Gen. Stat. §] 8C-1, Rule 804(b)(3) and (5).
 

 *487
 
 5. The conduct of the defendant as described above constitutes a forfeiture of the defendant's rights under the Sixth Amendment to the United States Constitution and under Article I, Section 23 of the Constitution of North Carolina to confront and cross-examine [Montes].
 

 Defendant argues the trial court did not properly find Montes unavailable under the North Carolina Rules of Evidence and the Confrontation Clause because the trial court failed to find the State made a good faith effort to obtain Montes' attendance at trial. We disagree. The trial court made sufficient findings of fact to demonstrate that the State utilized reasonable means and made a good faith effort to procure Montes' presence at trial.
 

 The North Carolina Rules of Evidence require that a finding of unavailability be supported by evidence of process or other reasonable means,
 
 Clonts
 
 , --- N.C. App. at ----,
 
 802 S.E.2d at 545
 
 , whereas, "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."
 
 Barber
 
 ,
 
 390 U.S. at 724-25
 
 ,
 
 88 S.Ct. 1318
 
 ,
 
 20 L.Ed. 2d at 260
 
 (finding the State did not make a good faith effort to obtain a witness' presence at trial where the sole reason the witness was not present was because the State did not attempt to seek his presence).
 

 Defendant refers us to
 
 Clonts
 
 , a case where our Court held the State did not make a good faith effort to obtain a witness' presence where the trial court made insufficient findings of fact related to a witness' unavailability where the trial court "did not address the option of continuing trial until [the witness] returned from [military] deployment, nor did it make any finding ... the State made a good-faith effort to obtain [the witness'] presence at trial[,] much less any findings demonstrating what actions taken by the State could constitute good-faith efforts."
 
 Clonts
 
 , --- N.C. App. at ----,
 
 802 S.E.2d at 546
 
 (citation and internal quotation marks omitted). The Court then noted that, assuming
 
 arguendo
 
 the findings were sufficient, the evidence was not sufficient to support a good faith effort to obtain the witness' presence where the State knew the witness was deployed, and only served a last minute subpoena, despite being provided with contact information with military personnel who were identified as the point of contact for the matter months prior.
 

 Id.
 

 at ----,
 
 802 S.E.2d at 546-47
 
 .
 

 In contrast, here, the trial court found that the State delivered a subpoena for Montes to her lawyer, and Montes agreed to appear in court and testify against defendant. Unlike the findings in
 
 Clonts
 
 , these findings
 
 *488
 
 support a conclusion both that the State utilized reasonable means and made a good faith effort to obtain the witness' presence at trial.
 

 ii.
 
 Confrontation Rights
 

 We now turn to defendant's argument that he did not forfeit his confrontation rights by wrongdoing. We disagree.
 

 Once a witness has been shown to be unavailable, our Court has held that, to protect a defendant's right to confrontation, "[w]e must determine: (1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the
 
 *569
 
 declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant."
 

 Id.
 

 at ----,
 
 802 S.E.2d at 551-52
 
 (citation and internal quotation marks omitted). Our Court reviews for alleged violations of constitutional rights
 
 de novo
 
 .
 
 State v. Graham
 
 ,
 
 200 N.C. App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009) (citation omitted). In the instant case, the recorded statement at issue was given by an unavailable declarant and is testimonial in nature, but defendant did not have the opportunity to cross-examine the declarant. However, the trial court found that, nonetheless, defendant forfeited his confrontation rights as to Montes by wrongdoing.
 

 "Under the doctrine of forfeiture by wrongdoing, 'one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.' "
 
 State v. Weathers
 
 ,
 
 219 N.C. App. 522
 
 , 524,
 
 724 S.E.2d 114
 
 , 116 (2012) (quoting
 
 Davis v.
 

 Washington,
 

 547 U.S. 813
 
 , 833,
 
 126 S.Ct. 2266
 
 ,
 
 165 L.Ed. 2d 224
 
 , 244 (2006) ),
 
 cert. denied
 
 ,
 
 366 N.C. 596
 
 ,
 
 743 S.E.2d 203
 
 (2013). Pursuant to this doctrine,
 

 when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they do have the duty to refrain from acting in ways that destroy the integrity of the criminal trial system.
 

 Id.
 

 Although North Carolina courts have applied this doctrine, they have not yet taken a position on the standard necessary to demonstrate forfeiture by wrongdoing.
 
 Id.
 
 at 525,
 
 724 S.E.2d at 116
 
 . Here, the trial court held the government to the preponderance of the evidence standard. The preponderance of the evidence standard is generally applied by federal courts applying Rule 804(b)(6) of the Federal Rules of Evidence, and tends to also be applied by state courts assessing forfeiture by wrongdoing.
 
 See
 

 Davis
 
 ,
 
 547 U.S. at 833
 
 ,
 
 126 S.Ct. 2266
 
 ,
 
 165 L.Ed. 2d at 244
 
 . In accord with these courts, we hold the trial court correctly determined that the State was
 
 *489
 
 required to establish forfeiture by wrongdoing pursuant to the preponderance of the evidence standard.
 

 Furthermore, we hold the State met this burden. The record shows defendant made phone calls that the court could find evidenced his intent to intimidate Montes into not testifying. He also threatened another testifying witness, Smith. In addition, his mother and grandmother, who helped facilitate defendant's threatening calls to Montes, showed up at Montes' parents' house prior to trial to engage in a conversation with her about her testimony. Based on the trial court's findings of fact related to this evidence, the trial court properly found, by at least a preponderance of the evidence, that the net effect of defendant's conduct was to pressure and intimidate Montes into not appearing in court and testifying in this case. Accordingly, the trial court properly concluded defendant forfeited his confrontation rights by wrongdoing.
 

 B.
 
 Evidence of Gang Affiliation
 

 Next, defendant argues the trial court erred by admitting irrelevant and prejudicial evidence of gang affiliation, including: (1) Smith's testimony that he and defendant were in a gang together, (2) Smith's testimony about his and defendant's ranking in the gang, (3) Davis' testimony that Smith and defendant were members of the Crip gang, and (4) Rogers' testimony that Smith and defendant were members of the Crip gang and that when he used defendant's masks during a robbery, he and his accomplices did so to "act like [they were] Crip."
 

 "North Carolina courts have long held that membership in an organization may only be admitted if relevant to the defendant's guilt."
 
 State v. Hinton
 
 ,
 
 226 N.C. App. 108
 
 , 113,
 
 738 S.E.2d 241
 
 , 246 (2013) (citations omitted). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2017). "Relevant evidence may also be excluded if 'its probative value is substantially outweighed by the danger of unfair prejudice.' "
 

 *570
 

 Hinton
 
 ,
 
 226 N.C. App. at 113
 
 ,
 
 738 S.E.2d at 246
 
 (quoting N.C. Gen. Stat. § 8C-1, Rule 403 (2017) ). The "admission of gang-related testimony tends to be prejudicial[.]"
 

 Id.
 

 Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the
 
 *490
 
 existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the 'abuse of discretion' standard which applies to rulings made pursuant to Rule 403.
 

 Dunn v. Custer
 
 ,
 
 162 N.C. App. 259
 
 , 266,
 
 591 S.E.2d 11
 
 , 17 (2004) (citations and internal quotation marks omitted).
 

 Pursuant to N.C. Gen. Stat. § 15A-1443 (2017), it is the defendant's burden to prove the testimony was erroneously admitted and he was prejudiced by the erroneous admission. "The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded."
 
 State v. Moses
 
 ,
 
 350 N.C. 741
 
 , 762,
 
 517 S.E.2d 853
 
 , 867 (1999) (quoting
 
 State v. Gappins,
 

 320 N.C. 64
 
 , 68,
 
 357 S.E.2d 654
 
 , 657 (1987) ).
 

 Here, assuming
 
 arguendo
 
 that the admission of this evidence was error, defendant has not shown that a different result likely would have ensued had the evidence been excluded because there was overwhelming evidence of defendant's guilt. Smith, a co-conspirator, and Rogers both testified that defendant participated in the robbery of the Shop-N-Go. Rogers' testimony also tended to tie the bandanas used in the Shop-N-Go robbery to defendant. Similarly, Montes' statement to law enforcement averred that she was present and witnessed defendant participate in the Shop-N-Go robbery. Additionally, the jury was shown surveillance video taken by cameras at the Shop-N-Go on the night in question, which tended to be consistent with Smith's testimony, Montes' statement, and the motive and planning shown by the other robberies that Smith and Davis testified defendant committed.
 

 In view of all of this evidence, we hold that defendant failed to show that there was a reasonable probability that defendant would have been acquitted if the gang references made during Smith, Roger, and Davis' testimony had not been admitted into evidence.
 

 III.
 
 Conclusion
 

 For the foregoing reasons, we find no error.
 

 NO ERROR.
 

 Judges INMAN and YOUNG concur.