IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-594

No. COA20-850

Filed 2 November 2021

Wake County, No. 18 CRS 204813

STATE OF NORTH CAROLINA

v.

JIMMY BROWN RODRIGUEZ, II

Appeal by Defendant from Judgment entered 1 November 2019 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 21 September 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Karen A. Blum, for the State.*

*Drew Nelson for defendant-appellant.*

HAMPSON, Judge.

## Factual and Procedural Background

¶ 1     Jimmy Brown Rodriguez, Jr. (Defendant) appeals from a Judgment and Commitment entered upon a jury verdict finding him guilty of Second-Degree Rape. The Record tends to reflect the following:

¶ 2     On 3 April 2018, a Wake County Grand Jury indicted Defendant on one count of Second-Degree Forcible Rape against a victim "who was at the time physically

helpless" in violation of N.C. Gen. Stat. § 14-27.22 and one count of Incest in violation of N.C. Gen. Stat. § 14-178. On 22 October 2019, prior to trial, Defendant filed a Motion *in Limine* seeking to exclude expected testimony—under Rule of Evidence 404(b)—from a State's witness alleging Defendant had previously forcibly raped the witness. Defendant's case came on for trial on 28 October 2019 in Wake County Superior Court.

¶ 3      At the outset, the trial court heard arguments regarding Defendant's various Motions to exclude certain evidence including the testimony of Brittany Mack (Mack). Defendant's counsel explained that Mack would likely testify Mack and Defendant had been in a three-year relationship and that Defendant had "forced sex" on Mack numerous times including five days prior to the acts giving rise to Defendant's charges in this case. The trial court heard Mack's testimony on *voir dire* that on numerous occasions, while Mack brought her and Defendant's son to visit Defendant, Defendant would direct Mack to his bedroom, lock the door, and force Mack to have intercourse with him. The trial court reserved its ruling on the admissibility of this testimony for later in the proceedings.

¶ 4      Prior to opening arguments and the jury being impaneled, Defendant pled guilty to the charge of Incest. The State gave its opening remarks in which the State explained the evidence would show on 5 March 2018, Defendant engaged in

intercourse with his niece, K.F.,[1] after inviting her to his residence and drinking alcohol, and the intercourse was "by force and against [K.F.'s] will because she was unable to consent." The State also explained to the jury that Defendant had already pled guilty to a charge of Incest for the acts in question in this case.

¶ 5   The State called K.F. as its first witness. K.F. testified that in January of 2018, she came to North Carolina from Texas to visit family. On the date in question, Defendant asked K.F. to come over to his apartment so that K.F. could "drive him around," and Defendant would "pay [K.F.] to drive him around." Defendant wanted K.F. to drive him around because he had been drinking. K.F. drove Defendant to a liquor store where Defendant bought "a fifth of Jack" and numerous "airplane bottles" of other liquors. Defendant and K.F. went back to Defendant's apartment, and Defendant asked K.F. if she "wanted to drink." K.F. replied that she did. Defendant then made K.F. a drink in a "red solo cup" that contained "a lot of Jack. More than [K.F.] was used to."

¶ 6   Defendant and K.F. then engaged in arm wrestling, and K.F. asked Defendant if he could show K.F. "moves like fighting wise[.]" After about ten minutes, Defendant and K.F. drank more alcohol, and K.F. "started feeling a little bit uncomfortable." According to K.F., Defendant "grazed [her] butt" twice. Then K.F. drank two "shots"

---

[1] We use the victim's initials to protect her privacy.

of liquor from the airplane bottles Defendant had purchased before Defendant gave K.F. another cup of alcohol. Defendant started to complain about back pain and asked K.F. to "rub IcyHot" on his back. K.F. agreed to do so because she had done that for her boyfriend when he had hurt his back. K.F. applied IcyHot to Defendant's back, then chest, while Defendant was shirtless on the living room floor. Defendant asked K.F. to "straddle" him while she applied IcyHot to his chest, but K.F. did not because she felt it was "inappropriate." K.F. was "pretty buzzed" as she applied IcyHot to Defendant's back and chest. Defendant then leaned in to try and kiss K.F. K.F. tried to "scoot" away from Defendant and ended up on her back while trying to avoid Defendant's continued advances. K.F. told Defendant "no," but Defendant kept trying to kiss her. At some point, K.F. "froze" and could no longer move. K.F. blacked out momentarily and remembered walking into the bedroom where she blacked out again. When K.F. regained consciousness, Defendant was having intercourse with her.

¶ 7     After hearing K.F.'s testimony, the trial court ruled "that the 404(b) evidence as it relates to alleged sexual assault by the defendant on Brittany Mack will be admissible for the limited purposes of showing absence of mistake, lack of consent and intent." The trial court found "that proximity is not at issue as this is alleged acts that most recently occurred five days prior to the alleged sexual assault" in this

case, and that there were similarities between Defendant's alleged rapes of Mack and

the circumstances in this case. As such, the trial court reasoned:

> So recognizing that rule 404(b) is a rule of inclusion, I do find that
> this proffered testimony should be admitted under 404(b). I have
> conducted the balancing test required by Rule 403 and do find
> that the evidence is sufficiently similar and not so remote in time
> as to be more probative than prejudicial under the balancing test
> and that the probative value is not outweighed by the prejudicial
> effect.

¶ 8        The State called Mack as its second witness. Mack testified she started dating

Defendant in 2016, and the couple had a child together. Mack later ended her

relationship with Defendant, but Mack and Defendant reached an agreement for

Defendant to visit Mack and Defendant's son. Mack testified that on numerous

occasions, when Mack brought her children to Defendant's apartment so Defendant

could visit his son, Defendant "would tell [Mack's] children that he needed to talk to

their mother," and Mack would follow Defendant into his bedroom while the children

remained in the living room. According to Mack, Defendant "would tell [Mack] to

take [her] clothes off or sometimes he would just start taking them off for [Mack]."

Then Defendant would, "pick [Mack] up and throw . . . or toss [Mack] on his bed."

¶ 9        Defense counsel objected to Mack's testimony Defendant threw her on his bed.

After a bench conference, the trial court instructed the jury:

> Ladies and gentlemen of the jury, evidence is being elicited
> tending to show that at an earlier time the defendant sexually
> assaulted Brittany Mack. This evidence is being received solely

> for the purpose of showing absence of mistake, that the defendant
> had the intent to -- I am sorry -- that the defendant had the intent
> to commit the crime charged in this case, and the lack of consent.
> If you believe this evidence, you may consider it but only for the
> limited purpose or purposes for which it was received.

Mack continued: "[Defendant] would either make me give him oral sex or he would continue to insert his penis inside of me." Mack did not consent to these encounters, but she did not scream because her "kids were in the room just ten feet away." Mack explained she had been unable to resist Defendant's sexual advances during their past relationship.

¶ 10        Defendant did not present any evidence at trial. Before the trial court sent the jury to deliberate, the trial court instructed the jury:

> Evidence was [presented] tending to show that at an earlier time
> the defendant sexually assaulted Brittany Mack. This evidence
> was received solely for the purpose of showing absence of mistake
> and/or that the defendant had the intent to commit the crime
> charged in this case. If you believe this evidence, you may
> consider it, but only for the limited purpose or purposes for which
> it was received.

During deliberation, the jury asked the trial court: "In the third element, can you please explain in detail should have reasonably known?" The trial court instructed the jury that it was "to consider what a reasonable person similarly situated would have known or should have known." After the jury informed the trial court that it could not reach a unanimous verdict, the trial court issued the jury an Allen charge instructing the jury to continue to deliberate. The jury eventually found Defendant

"guilty of second degree rape." The trial court sentenced Defendant to an active term of 96 to 176 months—including the charge of Incest to which Defendant pled guilty. Defendant gave oral Notice of Appeal in open court.

## Issues

The issues on appeal are whether the trial court: (I) erred in allowing testimony regarding Defendant's alleged prior rapes because the alleged prior rapes were not relevant to any material element of the charge of Second-Degree Forcible Rape in this case; and (II) abused its discretion in weighing the testimony's prejudicial effect against its probative value.

## Analysis

Defendant argues the trial court erred in admitting Mack's testimony regarding Defendant's alleged forcible rapes against her will because these alleged prior rapes were not relevant under Rule of Evidence 401 as they were not probative of any fact required to find Defendant committed Second-Degree Forcible Rape in this case. Alternatively, Defendant argues the trial court abused its discretion in weighing the probative value of Mack's testimony against its prejudicial effect pursuant to Rule of Evidence 403.

### I. Relevant Evidence

As a threshold matter, the State contends Defendant has not preserved this specific theory for appeal because Defendant only objected to this testimony at trial

under Rule of Evidence 404(b) as impermissible character evidence showing Defendant's propensity to commit rape. As such, according to the State, Defendant has not preserved the issue on the specific grounds the testimony was relevant pursuant to Rule 401. Thus, the State argues Defendant may only challenge this alleged error under a plain error standard of review.

Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake [.]

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2019). " 'In fact, as a careful reading of Rule 404(b) clearly shows, evidence of other offenses is *admissible* so long as it is *relevant to any fact or issue* other than the character of the accused.' " *State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987) (quoting *State v. Weaver*, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986)). When determining whether to admit evidence under Rule 404(b), the trial court must determine: (1) if the evidence is being offered for the purposes expressed in the Rule; and (2) whether the evidence is relevant. *State v. Bynum*, 111 N.C. App. 845, 848, 433 S.E.2d 778, 780, *cert. denied*, 335 N.C. 239, 439 S.E.2d 153 (1993). Thus, our courts have reasoned a determination of relevance under Rule 401 is likely subsumed in a trial court's decision to admit or exclude evidence under Rule 404(b). However, even assuming Defendant's Motion to exclude

this testimony pursuant to Rule 404(b) preserved his argument on appeal pursuant to Rule 401, the trial court did not err in concluding the testimony was relevant for the following reasons.

¶ 15 Defendant contends testimony regarding the alleged forcible rapes against Mack were not relevant to this case where the State only had to prove K.F. was physically helpless, and Defendant knew or should have reasonably known K.F. was physically helpless. Therefore, according to Defendant, Mack's testimony was "wholly unrelated" to the facts and allegations in this case. Rule 401 defines relevant evidence as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2019). "Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Allen*, 265 N.C. App. 480, 489, 828 S.E.2d 562, 570, *appeal dismissed, rev. denied*, 373 N.C. 175, 833 S.E.2d 806 (2019) (citation and quotation marks omitted).

¶ 16 Defendant was indicted on one count of Second-Degree Forcible Rape where the Grand Jury found Defendant "engage[d] in vaginal intercourse with [K.F.], who was at the time physically helpless" in violation of N.C. Gen. Stat. § 14-27.22. N.C. Gen. Stat. § 14-27.22(a) provides:

A person is guilty of second-degree forcible rape if the person engages in vaginal intercourse with another person:

(1) By force and against the will of the other person; or

(2) Who has a mental disability or who is mentally incapacitated or physically helpless, and the person performing the act knows or should reasonably know the other person has a mental disability or is mentally incapacitated or physically helpless.

N.C. Gen. Stat. § 14-27.22(a) (2019). Thus, the statute provides two distinct avenues

to prosecute a defendant: for acts committed by force and against the victim's will; or

acts committed against a victim who cannot express unwillingness. However:

The gravamen of the offense of second degree rape is forcible sexual intercourse. N.C. Gen. Stat. § 14–27.3 (2005). Force may be shown in several alternative ways including: (1) actual force, *State v. Hall*, 293 N.C. 559, 562-63, 238 S.E.2d 473, 475 (1977) (defendant grabbed victim's neck and pushed her onto the bed); (2) constructive force, *State v. Parks*, 96 N.C. App. 589, 594, 386 S.E.2d 748, 752 (1989) ("threats and displays of force by defendant for the purpose of compelling the victim's submission to sexual intercourse"); and (3) force implied in law, which includes sexual intercourse with a person who is mentally incapacitated, *State v. Washington*, 131 N.C. App. 156, 167, 506 S.E.2d 283, 290 (1998) ("[O]ne who is mentally defective under the sex offense laws is statutorily deemed incapable of consenting to intercourse or other sexual acts. . . . [F]orce is inherent to having sexual intercourse with a person who is deemed by law to be unable to consent." (Citations and quotation marks omitted.)), *disc. review denied and appeal dismissed*, 350 N.C. 105, 533 S.E.2d 477-78 (1999), sleeping, *State v. Moorman*, 320 N.C. 387, 392, 358 S.E.2d 502, 506 (1987) ( "[S]exual intercourse with [a sleeping] victim is *ipso facto* rape because the force and lack of consent are implied in law."), or physically helpless, *State v. Aiken*, 73 N.C. App. 487, 499, 326 S.E.2d 919, 926 ("The physical act of vaginal intercourse with the victim while she is physically

helpless is sufficient 'force' for the purpose of second degree rape[.]"), *disc. review denied and appeal dismissed*, 313 N.C. 604, 332 S.E.2d 180 (1985).

*State v. Haddock*, 191 N.C. App. 474, 480-81, 664 S.E.2d 339, 344-45 (2008).[2]

¶ 17    Therefore, when the State proceeds on a theory the victim was physically helpless, force and lack of consent are implied by law. Thus, at the very least, any mistake as to the victim's consent is relevant to a charge of Second-Degree Rape under such a theory.

¶ 18    Here, the State's theory of the case rested on the fact that K.F. was physically helpless against Defendant's actions. The trial court warned the jury it could only consider Mack's testimony for the purposes of proving intent, consent, and absence of mistake. The trial court again instructed the jury it could only consider Mack's testimony for the purposes of intent and absence of mistake before the jury deliberated. Because force and consent are relevant issues in any Second-Degree Forcible Rape case, the absence of any mistake as to consent was an issue relevant to this case. Although the force involved in the alleged rapes to which Mack testified

---

[2] Applying N.C. Gen. Stat. § 14-27.3 which provided:
(a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person: (1) By force and against the will of the other person; or (2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless. N.C. Gen. Stat. § 14-27.3 (2005).
In 2015, the General Assembly recodified N.C. Gen. Stat. § 14-27.3 as N.C. Gen. Stat. § 14-27.22. An Act To Reorganize, Rename, and Renumber Various Sexual Offenses . . . S.L. 2015-181, § 4(b), 2015 N.C. Sess. Laws 151, 461.

was not the same as the force implied by law in this case, it was relevant to prove Defendant did not mistake K.F.'s actions and inactions as consent in this case where he had allegedly raped Mack by force and without her consent previously. *See id.* at 481, 664 S.E.2d at 345 ("mental incapacity and physical helplessness are but two alternative means by which the force necessary to complete a rape may be shown"). Consequently, the trial court did not err in determining Mack's testimony was relevant pursuant to Rule 401.

## II. Abuse of Discretion

Defendant further argues, alternatively, the trial court abused its discretion "by improperly applying the Rule 403 balancing test" weighing the probative value of Mack's testimony against the danger of unfair prejudice. "[C]ases decided by [the North Carolina Supreme Court] under Rule 404(b) state a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense[.]" *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

After determining evidence is offered for a proper purpose and is relevant under Rule 404(b), the trial court must balance the evidence's probative value against its prejudicial effect pursuant to Rule 403. *Bynum*, 111 N.C. App. at 848-49, 433 S.E.2d at 780 (citation omitted). "Although relevant, evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2019). "Unfair prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *State v. DeLeonardo*, 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986) (citation and quotation marks omitted). We review a trial court's decision to admit or exclude evidence under Rule 403 for an abuse of discretion. *Bynum*, 111 N.C. App. at 849, 433 S.E.2d at 781 (citation omitted). The trial court abuses its discretion where its ruling "was so arbitrary that it could not have been the result of a reasoned decision." *State v. Jones*, 151 N.C. App. 317, 325, 566 S.E.2d 112, 117 (2002) (citation and quotation marks omitted).

¶ 21         Here, the trial court heard Defendant's pre-trial arguments on his Motion *in Limine* to exclude Mack's testimony. The trial court heard Mack testify on *voir dire* and could forecast the nature of Mack's testimony before Mack testified in front of the jury. The trial court acknowledged Rule 404(b) was a rule of inclusion and that "[Mack's testimony] was sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test and that the probative value is not outweighed by the prejudicial effect." The trial court limited Mack's testimony to the "purposes of showing absence of mistake, lack of consent and intent." Therefore, the trial court's decision to admit Mack's testimony was the result of a reasoned decision where the trial court heard the testimony on *voir dire*, limited the purpose

of the testimony, and acknowledged the testimony's prejudicial effect while conducting the balancing test. Consequently, the trial court did not abuse its discretion.

## **Conclusion**

Accordingly, for the foregoing reasons, there was no error at trial, and we affirm the Judgment.

NO ERROR.

Judges INMAN and MURPHY concur.